IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| QUENTIN A.,[1] | ) |
| | ) |
| *Plaintiff*, | ) |
| | ) |
| v. | ) Civil No. 3:23-cv-00014-DJN-SLS |
| | ) |
| MARTIN O'MALLEY, | ) |
| Commissioner of the | ) |
| Social Security Administration,[2] | ) |
| | ) |
| *Defendant*. | ) |
| | ) |

**REPORT AND RECOMMENDATION**

In this action, Plaintiff Quentin A. seeks review of the Commissioner of the Social Security Administration's ("SSA") decision to deny his Title II application for disability insurance benefits and Title XVI application for Supplemental Security Income ("SSI"). This matter comes before the Court for a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B) on cross-motions for summary judgment. (ECF Nos. 11, 12.) The motions have been fully briefed (ECF Nos. 11-13), rendering this matter ripe for review.

Plaintiff requests that the Court vacate the Commissioner's partially unfavorable decision and find Plaintiff disabled during the period from August 31, 2020 through September 20, 2021. (Plaintiff's Motion for Summary Judgment and Brief in Support (ECF No. 11) ("Pl.'s Mem.") at

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that federal courts refer to claimants by their first names and last initials in social security cases.

[2] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, he has been substituted for Acting Commissioner Kilolo Kijakazi as Defendant in this action. No further action need be taken to continue this suit. 42 U.S.C. § 405(g).

13.)  As the basis for such relief, Plaintiff argues that the Administrative Law Judge ("ALJ") erred in determining the residual functional capacity ("RFC") because she: (1) improperly evaluated the medical opinion of Nurse Practitioner Clementine Sekyere ("N.P. Sekyere"); (2) failed to consider the overall evidence regarding Plaintiff's ability to perform sustained work activity (Pl.'s Mem. at 8-10); and (3) wrongly rejected Plaintiff's subjective reports of his symptoms based on a lack of support from the record (Pl.'s Mem. at 12-13).  Plaintiff also contends that the ALJ erred in adopting the vocational expert's ("VE") testimony that Plaintiff could perform jobs requiring Plaintiff to use moving machinery, which would be in violation of the ALJ's RFC determination. (Pl.'s Mem. at 10-12.)

In response, the Commissioner argues that substantial evidence supports the ALJ's evaluation of the medical opinion evidence, consideration of the overall evidence, and assessment of Plaintiff's subjective complaints, and therefore, the ALJ's RFC determination should be affirmed.  (Defendant's Motion for Summary Judgment and Brief in Support Thereof (ECF No. 12) ("Def.'s Mem.") at 10-20.)  The Commissioner also contends that the ALJ properly found that Plaintiff could perform representative light occupations which do not involve exposure to moving mechanical parts consistent with the ALJ's RFC determination.  (Def.'s Mem. at 20-21.)

For the reasons set forth below, this Court finds that the ALJ complied with applicable regulations in making the RFC determination and that substantial evidence supports the ALJ's findings regarding consideration and analysis of N.P. Sekyere's medical opinion, the overall evidence, and Plaintiff's subjective complaints.  The Court also finds no reversable error in the ALJ's determination that Plaintiff could perform certain occupations within the Dictionary of Occupational Titles ("DOT") considering his RFC and other factors.  Therefore, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment (ECF No. 11) be DENIED,

Defendant's Motion for Summary Judgment (ECF No. 12) be GRANTED, and the final decision of the Commissioner be AFFIRMED.

## I. PROCEDURAL HISTORY

Plaintiff filed an application for disability insurance benefits and SSI on November 18, 2020, alleging disability beginning August 31, 2020. (Administrative Record ("R.") at 19, 79, 89.)[3] In his application, Plaintiff alleged that he suffered from chronic diarrhea, intestinal malrotation at birth requiring bowel resection, chronic malnutrition, chronic vitamin deficiency, low bone density, and depression. (R. at 79, 89.) The SSA denied Plaintiff's claims initially and again upon reconsideration. (R. at 19, 78, 87-88, 108-09, 119-123.) Plaintiff requested a hearing before an ALJ, and one was held on March 24, 2022. (R. at 59-77, 147-49.)

On April 7, 2022, the ALJ issued a partially favorable decision, holding that Plaintiff was not disabled under the Social Security Act ("the Act") prior to September 20, 2021. (R. at 19-31.) The ALJ found that Plaintiff became disabled on September 20, 2021 and continued to be disabled through the date of decision. (R. at 31.) On November 8, 2022, the SSA Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (R. at 1-4.) Plaintiff now seeks judicial review pursuant to 42 U.S.C. § 405(g) and § 1383(c).

## II. STANDARD OF REVIEW

The Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to

---

[3] The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these rules, the Court will exclude personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for the year of birth), and financial account numbers from this Report and Recommendation. The Court will further restrict its discussion of Plaintiff's medical information to the extent necessary to result in a proper analysis of the case.

result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual has a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." *Id.* § 423(d)(2)(A).

SSA regulations set forth a five-step process to determine whether an individual is disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see Mascio v. Colvin*, 780 F.3d 632, 634-35 (4th Cir. 2015) (describing the ALJ's five-step sequential evaluation). At step one, the ALJ must review the claimant's current work activity to determine if he has been participating in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). At step two, the ALJ must ask whether the claimant's medical impairments meet the regulations' severity and duration requirements. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). At step three, the ALJ must determine whether the medical impairment(s) meet or equal an impairment listed in the regulations. *Id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). Between steps three and four, the ALJ must determine the claimant's RFC, which accounts for the most that the claimant can do despite his impairments. *Id.* §§ 404.1545(a), 416.925(a).

At step four, the ALJ must assess whether the claimant can perform his past employment given his RFC. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). The burden of proof remains with the claimant through step four of the analysis, and the claimant must prove that his limitations preclude him from performing his past relevant work. *See Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987); *Hancock*, 667 F.3d at 472. If such past work can be performed, then benefits will not be awarded, and the analysis ends. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e). However, if the

claimant cannot perform his past work, the analysis proceeds to step five, and the burden then shifts to the Commissioner to show that the claimant can perform other work that is available in the national economy. *See id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). The Commissioner usually offers this evidence through the testimony of a VE. *See Mascio*, 780 F.3d at 635.

In reviewing the Commissioner's decision to deny benefits, a court will affirm the SSA's "disability determination 'when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence.'" *Mascio*, 780 F.3d at 634 (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)). Substantial evidence requires more than a scintilla but less than a preponderance of evidence and includes the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion. *See Hancock*, 667 F.3d at 472; *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). The substantial evidence standard "presupposes . . . a zone of choice within which the decision makers can go either way, without interference by the courts." *Dunn v. Colvin*, 607 F. App'x 264, 274 (4th Cir. 2015) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272-73 (8th Cir. 1988)). Thus, a decision by the Commissioner is not subject to reversal merely because substantial evidence would have supported a different conclusion. *Id.*

To determine whether substantial evidence exists, the court must examine the record as a whole, but may not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)); *see Craig*, 76 F.3d. at 589. The Court must consider the support for the Commissioner's decision and "whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)). If a fact is supported by substantial evidence, the reviewing

court must affirm, regardless of whether the court agrees with such findings. *Hancock*, 667 F.3d at 476 (citing *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996)). If the Commissioner's findings are arbitrary or unjustified, then they are not supported by substantial evidence, and the reviewing court must reverse the decision. *See Breeden*, 493 F.2d at 1007.

### III.   THE ALJ'S DECISION

The ALJ analyzed Plaintiff's disability claim in accordance with the five-step evaluation process. (R. at 19-31.) *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Mascio*, 780 F.3d at 634. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since August 31, 2020 (the alleged onset date). (R. at 21.) At step two, the ALJ determined Plaintiff suffered from the following severe impairments: small bowel obstruction with chronic diarrhea and malabsorption, diverticulitis, and peripheral neuropathy. (R. at 22.) At step three, the ALJ determined that prior to September 20, 2021, Plaintiff did not have an impairment, individually or in combination, which met or equaled a disability listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 22-24.)[4]

The ALJ then determined Plaintiff's RFC prior to September 20, 2021. (R. at 24-28.) Based on the evidence in the record, the ALJ found that prior to September 20, 2021, Plaintiff retained the ability to perform a range of light work as defined in 20 CFR §§ 404.1567(b) and 416.967(b) with the following limitations:

> [Plaintiff can] occasionally balance, stoop, kneel, crouch, crawl, climb ramps and stairs, and never climb ladders, ropes, or scaffolds; no heights, hazards, or moving machinery; must work in an environment that is in proximity to an accessible bathroom, such as what one would find in the normal office setting, as opposed to

---

[4] The ALJ found that beginning on September 20, 2021, Plaintiff's impairments met the criteria of Listing 5.06, relating to inflammatory bowel disease ("IBD"). (R. at 29-30.) Specifically, the ALJ found that Plaintiff satisfied the requirements of § 5.06(B)(1) and (6) based on hemoglobin levels shown on evaluations in September and November 2021 and Plaintiff's receipt of a gastronomy tube and total parenteral nutrition in January 2022. (R. at 30.)

>what one would find with, for example, a parks worker, a groundskeeper, or a utility line worker; concentrate, persist, and maintain pace to complete tasks that do not require production rate pace, meaning fast pace.

(R. at 24.)

The ALJ explained that she determined Plaintiff's RFC after considering "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSR 16-3p." (R. at 24.) The ALJ detailed her consideration of Plaintiff's bowel issues, weight loss, and peripheral neuropathy in Step Three. (R. at 22-24.) She included analysis of Plaintiff's hemoglobin levels, surgeries, and BMI. (R. at 23.) She noted that Plaintiff generally exhibited full strength, a normal gait, intact reflexes and sensations, and intact ranges of motion in his joints. (R. at 23-24.) The ALJ acknowledged that Plaintiff suffered from chronic diarrhea (which required supplemental hydration), an inability to eat solid food, and bloating and abdominal cramping. (R. at 24.) She noted Plaintiff's testimony that he is on the list for a small intestine transplant, and that he suffers from malnutrition and vitamin deficiencies. (R. at 24.) Plaintiff also testified that he "typically would have at least two bowel movements during a regular, eight-hour shift" and that he experienced bloating and painful abdominal cramping associated with his diarrhea. (R. at 24.)

The ALJ acknowledged Plaintiff's medical history, going as far back as his premature birth with intestinal malrotation. (R. at 25.) She noted his past abdominal surgery for a gunshot-related incident. (R. at 25.) She then outlined his medical history since 2020. She found that he complained of three to six loose stools per day and that lab work and a colonoscopy showed low copper and vitamin D levels, microcytic anemia, diverticulitis in the ascending colon and cecum, colonic anastomosis, and active ileitis. (R. at 25.) He underwent copper infusions and participated in Creon therapy. (R. at 25.) During a February 2021 examination, Plaintiff exhibited normal physical and mental symptoms. (R. at 25.) In June 2021, Plaintiff reiterated that he continued to

experience several loose stools a day and associated abdominal pain and bloating. (R. at 25.) Plaintiff had completed copper infusions and gained weight, but a CT scan showed chronically dilated small bowel loops. (R. at 25.) In August 2021, Plaintiff reported that he ceased Creon, as it stopped providing relief, and instead found relief with Imodium, but was still experiencing several loose stools a day. (R. at 25.) The ALJ noted that Plaintiff's bilateral peripheral neuropathy was possibly related to his copper deficiency and that copper levels had improved after infusions. (R. at 25.) The ALJ found that while some evaluations showed decreased sensations in lower extremities, Plaintiff "generally had unremarkable physical examinations, revealing normal coordination, intact reflexes, normal gait, full strength, and good ranges of motion in the joints." (R. at 25.)

The ALJ also "considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 404.1520c and 416.920c." (R. at 24.) The ALJ reviewed the medical opinion of Joseph Duckwall, M.D. ("Dr. Duckwall"), a state agency medical consultant, who opined that Plaintiff could perform a range of light work. (R. at 26.) The ALJ found this opinion persuasive in part. (R. at 26.) While Dr. Duckwall supported Plaintiff's ability to perform light work by referencing Plaintiff's daily activities and normal physical examinations, the ALJ found that Plaintiff required "greater postural limitations" than those opined by Dr. Duckwall because Plaintiff required bathroom access and environmental restrictions due to his occasional weakness and blurry vision. (R. at 26.)

The ALJ found the opinion of state agency medical consultant William Rutherford, M.D. ("Dr. Rutherford") to be unpersuasive. (R. at 26.) Dr. Rutherford opined that Plaintiff could perform medium level work by referencing normal physical examinations. (R. at 26.) The ALJ found that the "totality of the evidence" supported a greater limitation in light work with postural

and environmental limitations. (R. at 26.) The ALJ supported her rejection of Dr. Rutherford's opinion by referencing Plaintiff's reduced sensations, blurry vision and weakness, painful small bowel obstruction and diverticulosis, abdominal pain, fatigue, and need for bathroom breaks. (R. at 26.)

The ALJ found the opinion of N.P. Sekyere, who performed a consultative examination of Plaintiff, to be persuasive in part. (R. at 27.) N.P. Sekyere opined that Plaintiff could lift and carry 11 to 20 pounds frequently; occasionally lift and carry 51 to 100 pounds; sit about two hours, stand two hours, and walk two hours in a workday; frequently reach, handle, feel, and grasp; and frequently bend, stoop, kneel, and squat. (R. at 27.) The ALJ found that N.P. Sekyere "supported the postural limitations by referencing abnormal findings from her personal examination, such as [Plaintiff's] distended, painful abdomen, as well as his inability to tandem gait or walk on the heels." (R. at 27.) However, the ALJ found the record inconsistent with N.P. Sekyere's two-hour restrictions on Plaintiff's ability to sit, stand, and walk within a workday. (R. at 27.) The ALJ explained:

> [Plaintiff's] generally normal physical examinations, revealing full (5/5) strength, normal gait, intact ranges of motion in the joints, and normal reflexes and sensations, support his ability to sit, stand, and walk at the light level. Further, in consideration of possible time off-task for bathroom breaks, as well as troublesome symptoms, such as abdominal pain and fatigue, the undersigned finds that [Plaintiff] can only concentrate, persist, and maintain pace to complete tasks that do not require fast pace.

(R. at 27 (internal record citations omitted).)

The ALJ next reviewed the medical opinion of Christopher Le, M.D. ("Dr. Le"). (R. at 27.) Dr. Le found that Plaintiff had a medical condition that required him to use the bathroom at least six times during a 24-hour period, that Plaintiff suffered from chronic pain (resulting in loss of sleep and fatigue), and that Plaintiff's medical conditions caused him to be physically impaired,

9

such as when lifting heavy objects or performing strenuous activity. (R. at 27.) The ALJ found his opinion to be "not fully persuasive" because it was vague and Dr. Le failed to define certain phrases in "vocationally relevant terms." (R. at 27.) The ALJ also found that the record evidence supported Plaintiff's need to be close to a bathroom and work at a slower pace, but that he was capable of at least light work given his "unremarkable physical examinations." (R. at 27.)

Lastly, the ALJ assessed the medical opinion of state agency psychological consultant Howard Leizer, Ph.D. ("Dr. Leizer"), who opined that Plaintiff's mental impairments were non-severe. (R. at 27.) Another consultant, Richard Luck, Ph.D. ("Dr. Luck"), affirmed that opinion. (R. at 27.) The ALJ found these opinions to be persuasive. (R. at 27.) She stated:

> The consultants supported their opinion by referencing [Plaintiff]'s normal mental status examinations, revealing a normal mood and affect, logical thought processes, intact speech, and alert and oriented demeanor. Their opinions are consistent with [Plaintiff's] minimal mental health treatment, as well as his independence with daily activities, including managing finances, preparing meals, completing chores, and shopping in stores.

(R. at 27 (internal record citations omitted).)

After careful consideration of the evidence, the ALJ determined that Plaintiff's statements concerning the intensity, persistent, and limiting effects of his symptoms were not fully supported by the record. (R. at 25.) The ALJ summarized:

> [Plaintiff's] testimony that he is unable to sustain work activity is inconsistent with the medical history, and his daily activities, prior to the established onset date. During the relevant period, [Plaintiff] struggled with his need for frequent restroom breaks, due to congenital intestinal issues and problems with malabsorption. However, he could still manage his personal care, prepare meals, complete chores, drive a car, shop in stores, and handle his own finances. Prior to the established onset date, [Plaintiff] conservatively managed his symptoms with medications, including Imodium, and he reported relief with medication. Although he exhibited abdominal tenderness, he generally had normal physical examinations, revealing full (5/5) strength, normal gait, intact ranges of motion in the joints, and normal reflexes and sensations. His weight remained stable, as he had a low-normal BMI.

10

> Overall, [Plaintiff] alleged a greater degree of debilitation than the record can support, prior to the established onset date.

(R. at 26.)

After completing the RFC assessment, the ALJ then determined Plaintiff's vocational factors. She found that since the alleged onset date, Plaintiff has been unable to perform his past relevant work as a van driver and line cook. (R. at 28.) She also found that Plaintiff has a limited education and that prior to September 20, 2021, Plaintiff met the definition of a younger individual. (R. at 28.)

At step five, the ALJ concluded that prior to September 20, 2021, there were jobs in significant national numbers that Plaintiff could have performed given his limitations. (R. at 28-29.) The ALJ adopted the VE's testimony that Plaintiff could perform the jobs of cafeteria attendant, folding machine operator, and mail sorter. (R. at 28-29.)

## IV. ANALYSIS

In reviewing the Commissioner's decision to deny Plaintiff's application, the Court must determine whether: (1) the ALJ has applied the correct legal standards; and (2) the ALJ's findings are supported by substantial evidence. *Mascio*, 780 F.3d at 634 (citing *Bird*, 699 F.3d at 340). "In reviewing for substantial evidence, [a court must not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001). Consequently, as long as the judgment is explained and supported by substantial evidence, this Court must accept the Commissioner's decision, even if this Court would reach an opposite conclusion or weigh the evidence differently if it were conducting a *de novo* review of the record. *See Hays v. Sullivan*, 907 F.2d 1453, 1456

11

(4th Cir. 1990); *Rhyne v. Astrue*, No. 3:09-cv-412, 2011 WL 1239800, at *3 (W.D.N.C. Mar. 30, 2011).

For the reasons that follow, this Court finds that the ALJ properly considered the medical opinion of N.P. Sekyere, the overall record evidence, and Plaintiff's subjective complaints and that the ALJ properly determined that Plaintiff could perform certain occupations within the DOT. The Court finds that substantial evidence supports the ALJ's determinations.

### A. The ALJ Complied with Applicable Regulations in Making the RFC Determination and Substantial Evidence Supports the ALJ's Findings

*1. The ALJ Reasonably Considered N.P. Sekyere's Medical Opinion in Compliance with the Regulations*

Plaintiff asserts that the ALJ did not adequately consider N.P. Sekyere's opinion, which found Plaintiff could only sit, stand, or walk for two hours each, for a total of six hours in an eight-hour day. (Pl.'s Mem. at 9-10.) The Court finds otherwise. Specifically, the Court finds that the ALJ properly analyzed and provided for her reasoning regarding N.P. Sekyere's opinion, including the ALJ's rejection of the two-hour limit on sitting, standing, or walking.

Claims involving medical opinion evidence filed on or after March 27, 2017 are evaluated using a revised regulatory framework. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. 20 C.F.R. §§ 404.1520c, 416.920c. This framework applies in Plaintiff's case. Under the regulations, the ALJ must evaluate each medical opinion and articulate the "persuasiveness" of all medical opinions by considering five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) "other factors that tend to support or contradict the medical opinion[,]" including familiarity with the other evidence or understanding of disability program policies and requirements. *Id*. §§ 404.1520c, 416.920c(b)-(c). Supportability and consistency are the "most

12

important" factors, and the ALJ must discuss how these factors were considered in the written opinion. *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2). The regulations define supportability and consistency as follows:

> (1) *Supportability*. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) *Consistency*. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

*Id.* §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2). The ALJ may, but is not required to, explain how the other factors were considered. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

Here, the ALJ complied with the regulations in assigning weight to N.P. Sekyere's opinion, contained in a Medical Consultant Report dated February 27, 2021. (R. at 383-88.) Therein, N.P. Sekyere found that Plaintiff was able to perform all listed activities of daily living: bathing, dressing, eating, cooking, and cleaning, doing the dishes, and vacuuming. (R. at 383.) N.P. Sekyere opined that Plaintiff could sit for about two hours in an eight-hour workday, stand and walk for the same. (R. at 387.) The ALJ found N.P. Sekyere's opinion to be persuasive in part, noting that:

> [N.P.] Sekyere supported the postural limitations by referencing abnormal findings from her personal examination, such as the claimant's distended, painful abdomen, as well as his inability to tandem gait or walk on the heels. However, the [ALJ] finds that the record is, otherwise, consistent with different limitations. [Plaintiff]'s generally normal physical examinations, revealing full (5/5) strength, normal gait, intact ranges of motion in the joints, and normal reflexes and sensations, support his ability to sit, stand, and walk at the light level. Further, in consideration of possible time off-task for bathroom breaks, as well as troublesome symptoms, such as abdominal pain and fatigue, the [ALJ] finds that [Plaintiff] can only concentrate, persist, and maintain pace to complete tasks that do not require fast pace.

(R. at 27 (internal record citations omitted).) Thus, the ALJ found that N.P. Sekyere supported certain postural limitations in her opinion by referencing her own examination findings but found the record inconsistent with a two-hour limitation on sitting, standing, and walking. (R. at 27.) Instead, the ALJ found that the record, including Plaintiff's generally normal physical examinations, supported Plaintiff's "ability to sit, stand, and walk at the light level." (R. at 27.) The ALJ arrived at other limitations in the RFC to address Plaintiff's "troublesome symptoms," including providing for access to a nearby bathroom and slower paced work. (R. at 27.)

The Court finds no error in this analysis. The ALJ complied with the regulations in weighing N.P. Sekyere's opinion, and substantial evidence supports the ALJ's findings. While Plaintiff disagrees, the Court must abstain from reweighing conflicting evidence or substituting its judgment for that of the ALJ. *See Hancock*, 667 F.3d at 472; *Dunn*, 607 F. App'x at 274.

> 2. *The ALJ Reasonably Considered the Overall Record Evidence and Accounted for Plaintiff's Need for Bathroom Breaks in the RFC*

Plaintiff next argues that the ALJ failed in determining the RFC to consider the overall evidence concerning Plaintiff's inability to do sustained work-related activities due to bowel and intestinal issues. (Pl.'s Mem. at 8-9.) Specifically, Plaintiff contends that he could not work at a "regular and continuing basis" given the extra time Plaintiff required to use the bathroom and his need for unscheduled breaks. (Pl.'s Mem. at 9; *see also* Plaintiff's Reply Brief at 1 (ECF No. 13).) The Court finds that the ALJ adequately considered Plaintiff's medical history, including his treatment history, and activities of daily living before arriving at the RFC determination which provided for "proximity to an accessible bathroom" and work that does not require a fast pace. (R. at 24.) Therefore, the Court finds no reversible error.

In the RFC assessment, the ALJ acknowledged Plaintiff's complaints of chronic diarrhea and treatment thereof. (R. at 25.) The ALJ noted that in 2020, Plaintiff reported approximately

three to six loose stools per day, with improvement from Creon therapy and copper infusions. (R. at 25.) By June 2021, Plaintiff reported that he "continued to experience diarrhea with several watery bowel movements per day," accompanied by bloating and abdominal pain. (R. at 25.) Plaintiff replaced Creon with Imodium, as Creon was not providing relief, and during the relevant period, reported relief from Imodium. (R. at 25, 26.) The ALJ further found Plaintiff capable of managing his personal care, preparing meals, completing household chores, driving a car, shopping in stores, and handling his own finances. (R. at 26.) The ALJ noted that "[i]n consideration of possible time off task for bathroom breaks, as well as troublesome symptoms, such as abdominal pain and fatigue, [Plaintiff] could only concentrate, persist, and maintain pace to complete tasks that do not require fast pace." (R. at 28.) The ALJ's RFC determination also required "work in an environment that is in proximity to an accessible bathroom." (R. at 24.)

The Court finds that the ALJ properly considered the evidence concerning Plaintiff's need for bathroom breaks and fashioned restrictions in the RFC determination relating to the same. Because substantial evidence supports the ALJ's conclusions, the Court finds that the ALJ did not err.

> 3. *The ALJ Properly Assessed Plaintiff's Subjective Reports of Symptoms and Substantial Evidence Supports her Findings*

Plaintiff also contends that the ALJ improperly dismissed Plaintiff's subjective reports of symptoms by citing to a lack of support from the objective medical evidence. (Pl.'s Mem. at 12-13.) The Court disagrees.

The regulations provide for a two-step process in evaluating Plaintiff's subjective complaints of pain in the disability determination. 20 C.F.R. §§ 404.1529, 416.929; *see also* SSR 16-3p. First, the ALJ must determine "whether objective medical evidence presents a 'medically determinable impairment' that could reasonably be expected to produce the claimant's alleged

15

symptoms." *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 95 (4th Cir. 2020) (citing 20 C.F.R. § 404.1529(b); SSR 16-3p). Second, "after finding a medically determinable impairment, the ALJ must assess the intensity and persistence of the alleged symptoms to determine how they affect the claimant's ability to work and whether the claimant is disabled." *Id.* The claimant does not need to produce objective evidence to satisfy this second prong. *Id.* Indeed, the Fourth Circuit recently found that a claimant was allowed to rely entirely on subjective evidence of her pain to demonstrate that it was sufficiently persistent and severe. *See Shelley C. v. Comm'r of Soc. Sec. Admin.*, 61 F.4th 341, 360-61 (4th Cir. 2023).

The ALJ followed this two-step process, finding that "[a]fter careful consideration of the evidence," Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff]'s statements concerning the intensity, persistence and limiting effects of these symptoms [we]re not fully supported, prior to September 20, 2021, for the reasons explained in this decision." (R. at 25.) Plaintiff argues that this statement is in direct contradiction to 20 C.F.R. § 404.1529(c)(2)'s requirement that an ALJ "will not reject subjective reports about the intensity and persistence of symptoms solely because the available objective medical evidence does not substantiate the Plaintiff's statements." (Pl.'s Mem. at 13.) The ALJ, however, analyzed more than the objective medical evidence in finding Plaintiff's statements not fully supported. (R. at 25-28.) The ALJ identified inconsistencies between the Plaintiff's subjective complaints and Plaintiff's stated capabilities, activities of daily living, as well as physical examinations and objective evidence. Specifically, the ALJ found that: (1) Plaintiff's physical examinations were normal, despite his alleged pain and peripheral neuropathy (R. at 25-26); (2) Plaintiff could manage his symptoms with medication (R. at 26); and (3) Plaintiff could perform daily activities despite his pain and need for frequent bathroom breaks. (R. at 26.)

16

Because the ALJ did not reject Plaintiff's statements regarding the intensity of his symptoms solely because objective evidence did not substantiate the claims, the Court finds that the ALJ followed the regulations in reaching the RFC determination and that substantial evidence supports that determination.

### B. The ALJ Did Not Err in Finding Plaintiff Could Perform Other Work Available in the National Economy Consistent with the RFC Determination

Plaintiff next argues that the ALJ erred in finding Plaintiff could perform other work available in the national economy, such as the jobs of folding machine operator and mail sorter, because those two jobs would require Plaintiff to use moving machinery, which the RFC prohibits. (Pl.'s Mem. at 11-12.) The Court finds that the ALJ reasonably determined based on the VE's testimony and the DOT that the jobs of folding machine operator and mail sorter comply with the RFC determination. Moreover, the ALJ also found that Plaintiff could perform other work available in the national economy, including that of cafeteria attendant, which Plaintiff does not challenge. Therefore, the Court finds no reversible error.

The ALJ's RFC determination included a restriction of "no heights, hazards, or moving machinery." (R. at 24.) Consistent with the RFC, the ALJ asked the VE at the hearing about jobs available in the national economy that "may have no exposure to…moving machinery." (R. at 73.) The VE identified representative light, unskilled occupations, such as cafeteria attendant, folding machine operator, and mail sorter. (R. at 29, 73.) While Plaintiff contends that the latter two jobs involve moving machinery, the DOT definitions for those two occupations provide otherwise, stating: "Moving Mech. Parts: Not Present – Activity or condition does not exist." Folding-Machine Operator, DICOT 208.685-014, 1991 WL 671754; Mail Sorter, DICOT 209.68-026, 1991 WL 671813. Based on those DOT descriptions and the VE's testimony, the Court finds

no error in the ALJ's determination that Plaintiff could perform the work of folding machine operator and mail sorter consistent with the RFC.

In addition, the ALJ also determined, based on the VE's testimony, that Plaintiff could perform the work of a cafeteria attendant, another occupation existing in significant numbers in the national economy. (R. at 29.) Plaintiff does not challenge this finding. For this reason too, the Court finds that any alleged error in the ALJ's consideration of the mail sorter and folding machine operator jobs would be harmless. *See Cameron v. Chater*, 1995 WL 321242, at *4 (4th Cir. May 30, 1995) (unpublished); *Fredell v. Berryhill*, 2019 WL 7559670, at *4 (W.D.N.C. Dec. 20, 2019), *report and recommendation adopted by* 2020 WL 119935 (W.D.N.C. Jan. 9, 2020) (finding harmless error in the ALJ's failure to resolve an apparent conflict between an RFC limitation and DOT description where other occupations remained available that the plaintiff could perform).

## V. CONCLUSION

For the reasons set forth above, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment (ECF No. 11) be DENIED, Defendant's Motion for Summary Judgment (ECF No. 12) be GRANTED, and that the final decision of the Commissioner be AFFIRMED.

Let the clerk forward a copy of this Report and Recommendation to United States District Judge David J. Novak and to all counsel of record.

### NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a *de novo* review of the determinations contained in the report and such failure shall bar**

**you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

                                                /s/
                                        Summer L. Speight
                                        United States Magistrate Judge

Richmond, Virginia
Date: January 5, 2024